IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| RENCE PERKINS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Civil Action No. 12-0468-CG-N |
| | ) | |
| BERG SPIRAL PIPE CORP. | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## ORDER

This matter is before the court on the motion for partial summary judgment filed by the defendant, Berg Spiral Pipe Corporation ("Berg"). The parties have filed briefs and evidentiary materials in support of their respective positions (Docs. 29, 36), and the motion is now ripe for resolution. After careful consideration of the foregoing, the court concludes that the motion is due to be **GRANTED**.

## I. FACTUAL BACKGROUND

The timeline of Perkins' claim against Berg is intertwined with that of his Chapter 13 bankruptcy, as well as a separate racial discrimination claim that he brought against his former employer, International Paper (the "International Paper claim").

Berg specializes in spiral pipe production for the oil and gas industries and has its manufacturing facility located in Mobile, Alabama. Perkins began working there as a maintenance technician on or about June 30, 2008.

Doc. 1 at 2; Doc. 29-8 at 1.  Perkins alleges that soon thereafter, he was discriminated against by his supervisors on the basis of his race.  Doc. 29-8 at 1.  Approximately 8 months later, on February 26, 2009, Perkins filed a voluntary Chapter 13 petition for bankruptcy in the United States Bankruptcy Court for the Southern District of Alabama (the "Petition").  Doc. 29-2.  Perkins listed the International Paper claim on Schedule "B" of the Petition, but did not list any potential racial discrimination claims against Berg.  Id. at 21.

On May 19, 2010, the Bankruptcy Court approved a confidential settlement of the International Paper claim, which Perkins' counsel represented was sufficient to pay off Perkins' debts as set forth in the Chapter 13 Plan.  Doc. 29-6 at 1.  On August 15, 2010, Perkins filed an EEOC charge against Berg (the "EEOC charge"), alleging racial discrimination and retaliation which began "shortly after [he] was hired" in June 2008.  Doc. 29-8 at 1.  Perkins did not amend his Petition to disclose the EEOC charge.  Doc. 29-8.  On July 6, 2011, the bankruptcy court discharged Perkins and decreed that his Chapter 13 Plan was completed.  Doc. 29-12 at 11.  Perkins then filed the instant lawsuit approximately one year later on July 19, 2012.

On January 2, 2013, Berg filed a motion for partial summary judgment alleging that the doctrine of judicial estoppel applies to Perkins' claims in the instant case because he took the position, under oath before the bankruptcy court, that the instant claims did not exist (Doc. 28).

## II. ANALYSIS

### A. Statement of the Law

"Judicial estoppel is an equitable doctrine invoked at a court's discretion." Burnes v. Pemco Aeroplex, Inc., 291 F.3d 1282, 1285 (11th Cir. 2002) (citing New Hampshire v. Maine, 532 U.S. 742, 750 (2001). The doctrine "prevents a party from asserting a claim in a legal proceeding that is inconsistent with a claim taken by that party in a previous proceeding." New Hampshire, 532 U.S. at 749 (internal quotations omitted). Although there are no "inflexible prerequisites or an exhaustive formula for determining the applicability of judicial estoppel," the U.S. Supreme Court has enumerated several factors which typically inform the decision of whether or not to apply judicial estoppel in a particular case. Id. at 751. "First, a party's later position must be clearly inconsistent with its earlier position." Id. at 750 (string citation omitted). "Second, courts regularly inquire whether the party has succeeded in persuading a court to accept that party's earlier position, so that judicial acceptance of an inconsistent position in a later proceeding would create 'the perception that either the first or the second court was misled...'" Id. (quoting Edwards v. Aetna Life Ins. Co., 690 F.2d 595, 599 (6th Cir. 1982). "[T]hird...is whether the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped." Id. at 751

Courts in the Eleventh Circuit consider two additional factors. "First,

3

it must be shown that the allegedly inconsistent positions were made under oath in a prior proceeding.  Second, such inconsistencies must be shown to have been calculated to make a mockery of the judicial system." Burnes, 291 F.3d at 1285.  However, these two factors are not "inflexible or exhaustive," and therefore the court must give due consideration to all of the circumstances of a particular case. Id. at 1286.

As a general matter, "while privity and/or detrimental reliance are often present in judicial estoppel cases, they are not required." Id.  This is because judicial estoppel protects the integrity of the judicial system, and not that of the litigants. Id. (quoting Ryan Operations G.P. v. Santiam-Midwest Lumber Co. et al., 81 F.3d 355, 362 (3rd Cir. 1996).

A party who is under Chapter 13 or Chapter 7 bankruptcy protection from creditors is under a continuing duty to disclose all assets and potential assets to the bankruptcy court.  Robinson v. Tyson Foods, Inc., 595 F.3d 1269, 1274 (11th Cir. 2010) ( "The duty to disclose is a continuing one that does not end once the forms are submitted to the bankruptcy court; rather the debtor must amend [her] financial statements if circumstances change.") (citing Burnes, 291 F.3d at 1286).

**B. Statement Under Oath In A Prior Proceeding**

It is undisputed that Perkins did not list the claims at issue in the instant case in his Petition in 2009.  The court takes the electronic signatures on the Petition at face value and finds as a matter of undisputed fact that

4

Perkins submitted his Petition, including Schedule B, under oath to the

Bankruptcy Court on February 26, 2009, which predates the instant case.

Doc. 29-2 at 3.  The court also notes that the docket sheet from Perkins'

bankruptcy case does not reflect any amendment to the initial Petition.  Doc.

29-12.  Therefore, the matter turns upon the question of intent.

### C. Intent

Judicial estoppel may be applied only in situations involving

intentional manipulation of the courts, and not when the litigant's

contradictory positions are "the product of inadvertence or mistake."  Burnes,

291 F.3d at 1287 (quoting Matter of Cassidy, 892 F.2d 637, 642 (7th Cir.

1990)).  In cases where a debtor fails to disclose a claim or potential claim in

a bankruptcy proceeding, the court will find the failure inadvertent only

when the debtor either (i) lacks knowledge of the undisclosed claim or (ii) has

no motive for its concealment.  Burnes, 291 F.3d at 1287 (citing In re Coastal

Plains, Inc., 179 F.3d 197, 210 (5th Cir. 1999).  Otherwise, intent may be

inferred.  Id.

### 1.) Knowledge of Claims

Perkins' EEOC Charge and his complaint both refer to instances of

alleged discrimination beginning "shortly after [he] was hired" in 2008.  Doc.

29-8 at 1; see also Doc. 1 at 3, ¶9.  Thus, by his own admission, Perkins had

knowledge of potential claims against Berg prior to filing for bankruptcy.

The law is clear that "[t]he property of [the] bankruptcy estate includes all

5

potential causes of action existing at the time petitioner files for bankruptcy."
Casanova v. Pre Solutions, Inc., 228 Fed. Appx. 837, 841 (11th Cir. 2007)
(quoting Barger v. City of Cartersville, 348 F.3d 1289, 1293 (11th Cir. 2003)).
See also Ajaka v. Brooksamerica Mortgage Corporation, 453 F.3d 1339, 1344
(11th Cir. 2006) ("[a] debtor seeking shelter under the bankruptcy laws must
disclose all assets, or potential assets, to the bankruptcy court.") (emphasis
added).

Perkins attempts to sidestep this fact by arguing that "his only viable
claims arose within 180 days of the filing of the [EEOC] charge in August,
2010." Doc. 36 at 3. However, the court notes that Counts One and Two of
Perkins' complaint allege a pattern and practice of discrimination and
retaliation. Doc. 1 at 8, ¶ 28 ("The Defendant has a habit and/or practice of
discriminating against African-Americans."); Doc. 1 at 10, ¶ 35 ("The
Defendant has a habit and/or practice of retaliating against employees who
engage in protected activity."). Thus, because Perkins himself frames the
alleged discriminatory and retaliatory employment practices as a pattern and
practice and not as multiple discrete instances of discrimination and
retaliation, the court is inclined to view both the EEOC charge and the
complaint as alleging continuing Title VII violations from 2008 through
August of 2010.

Furthermore, Perkins also brings his claims pursuant to § 1981. Doc.
1 at 9, ¶29 and Doc. 1 at 10, ¶34. Therefore, his claims are subject to a four-

year statute of limitations, independent of the Title VII requirement that claims be filed with the EEOC within 180-days after the alleged discriminatory employment action.  See Campbell v. United Parcel Service, 2007 WL 900839 at *3-4 (M.D. Ala. 2007).

Accordingly, the court finds that Perkins had knowledge of his potential claims against Berg when he filed the Petition with the bankruptcy court, and when he later failed to amend the Petition to disclose those claims.

### 2.) Motive to Conceal Claims

The issue of intent thus depends upon whether Perkins had a motive to conceal his discrimination claim from the bankruptcy court.  Perkins apparently believes that the fact that he filed his EEOC charge after confirmation of his Chapter 13 plan somehow carries weight in determining whether or not he had a motive to conceal his claims against Berg.  Doc. 36 at 3, 6.  Yet none of the case law cited in his brief establishes that confirmation of the Chapter 13 plan is a benchmark which relieves a debtor of the continuing obligation to disclose all assets and potential claims to the bankruptcy court.  See Casanova, 228 Fed. Appx. at 841; Barger, 348 F.3d at 1293; and Ajaka, 453 F.3d at 1344, supra.  Nor has Perkins addressed the fact that, had he amended his Petition to include the potential claim against Berg, his creditors would have been able to seek revocation of the confirmation of his Chapter 13 plan.  See Ajaka, 453 F.3d at 1346.[1]

---

[1] The Ajaka court found that there was "significant evidence" that the

The court also notes that the bankruptcy court allowed Perkins to hire plaintiff's counsel on February 2, 2010, which was two weeks before Perkins filed a motion to approve the International Paper settlement, more than three months before the bankruptcy court approved the settlement, and approximately 8 months before Perkins filed his EEOC charge. Doc. 29-12 at 5; Doc. 29-8. Thus, there existed a significant period of time where Perkins, under the guidance and representation of plaintiff's counsel, could have corrected his initial failure to report his potential claim against Berg by amending the Petition.

Perkins also argues that he had no motive to conceal because his settlement of the International Paper claim "satisfied his debts." Doc. 36 at 4. He points out that he even received a refund from the bankruptcy estate after his debts were paid. Id. See also, id. at 6 ("Plaintiff's debts were **not** discharged and his debts were paid off prior to the expiration of the plan, i.e., he paid all of his debts **earlier than he had to**.") (emphasis in original). Given these facts, Perkins argues that that he gained no advantage in failing to amend his Petition, that "[t]here is simply no evidence Plaintiff was cut a deal by his creditors," id. at 7, and thus he had no motive. Id.

This argument contains a gaping omission – namely, that the

---

plaintiff did not intend to conceal his Truth In Lending Act claim from his creditors because "all of Ajaka's creditors, including Defendants, were aware … that Ajaka had a colorable TILA claim." Ajaka, 453 F.3d at 1345. There is no such evidence on the record in this case which suggests that Perkins' creditors were on notice of his potential claims against Berg or his subsequent EEOC charge.

International Paper settlement was sufficient to pay all of Perkins' debts

under the Chapter 13 plan, but not all of his debts as reported on his initial

Petition.  See Doc. 26-2 .  The Petition indicates that Perkins owed

$99,778.24 in priority and nonpriority unsecured claims, Doc. 29-2 at 17,

whereas the Final Report and Accounting indicates that under the Chapter

13 plan, Perkins paid only $41,937.10 in priority and nonpriority unsecured

claims (or approximately 42% of total unsecured claims reported in the

Petition).  Doc. 29-10 at 2.  Had Perkins reported a potential claim against

Berg on Schedule B of his Petition, the total amount of unsecured debt that

he was required to pay under Chapter 13 plan could have been higher.  See

De Leon v. Comcar Ind., Inc., 321 F.3d 1289, 1291 (11th Cir. 2003) ("a

financial motive to secret assets exists under Chapter 13 … because the

hiding of assets affects the amount to be discounted and repaid.").

Alternatively, had Perkins amended his Petition to report the claim, his

creditors could have sought to revoke the confirmation of Perkins' Chapter 13

plan.  See Ajaka at 1346.

Therefore, Perkins appeared to gain an advantage when he failed to

list his potential claims against Berg on his Petition because, by omitting the

potential claim, he could keep any proceeds resulting from his claim for

himself and not have them become part of the bankruptcy estate, resulting in

higher payments under the Chapter 13 plan.  See also Barger v. City of

Cartersville, Ga., 348 F.3d 1289, 1296 (11th Cir. 2003);  see also Robinson v.

Tyson Foods, Inc., 595 F.3d 1269, 1275 (11th Cir. 2010).  The same logic holds

true for Perkins' failure to amend his Petition.  Thus, Perkins' fulfillment of

his Chapter 13 plan, formulated by the bankruptcy court without knowledge

of a second potential claim, does not refute an alleged motive to conceal.

Accordingly, the court finds that Perkins' knowledge of a potential

discrimination claim and his motive to conceal it are sufficient evidence from

which to infer his intentional manipulation.  See Burnes, 291 F.3d at 1287.

The court finds further that the doctrine of judicial estoppel is appropriate in

this case, where Perkins failed to disclose his potential claims against Berg in

his initial Petition, and then failed to amend the Petition even after he was

represented by counsel experienced in employment discrimination litigation.

Berg's motion for partial summary judgment is therefore **GRANTED**, and

Perkins is therefore **ESTOPPED** from collecting monetary damages from the

defendants in the instant action.

**DONE** and **ORDERED** this 7th day of February 2013.

/s/ Callie V. S. Granade
**UNITED STATES DISTRICT JUDGE**